IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DUTCH VALLEY GROWERS, INC., an Illinois corporation, and JAMES PAARLBERG d/b/a PAARLBERG FARMS, an Indiana sole proprietorship, <br><br> Plaintiffs, <br><br> v. <br><br> JOHN RIETVELD, individually, DUTCH VALLEY PARTNERS, LLC, an Illinois limited liability company, DUTCH VALLEY HYBRIDS, LLC, an Illinois limited liability company, and KATHY ROSENBERG, individually, <br><br> Defendants. | Case No. _____ |

## COMPLAINT

Plaintiffs, Dutch Valley Growers, Inc. ("Growers") and James Paarlberg d/b/a Paarlberg

Farms ("Paarlberg Farms"), by and through the undersigned counsel, for their Complaint against

Defendants, John Rietveld ("Rietveld"), Dutch Valley Partners, LLC ("Partners"), Dutch Valley

Hybrids, LLC ("Hybrids"), Kathy Rosenberg ("Rosenberg") (Rietveld, Partners, Hybrids, and

Rosenberg, collectively "Defendants"), state as follows:

## NATURE OF THIS ACTION

1.  This action arises from Rietveld and Rosenberg's, two former employees and exclusive

sales agents for Growers, egregious misappropriation of Growers' property including without

limitation, misappropriating Growers' name which Growers has used for in excess of 80 years of

operation and Growers' other trademarks and Growers' Confidential Information/Trade Secrets.

This misappropriation included registering without authorization Growers' Marks (defined

1

hereinbelow) in the name of Partners, a non-operational affiliated entity formed in 2006 many decades after Growers in whom Rietveld and Rosenberg originally jointly held a $1/6^{th}$ interest.

2. In addition, Defendants concealed the fact that such registration was held by Partners or that Partners held any assets, and then acquired an additional 4/6ths interest in Partners without disclosing to the other owners of Partners, including without limitation, Paarlberg Farms, that Partners held such registrations, all in an effort to obtain ownership and control over Partners and registrations for Growers' trademarks and to operate Partners and Hybrids as directly competing companies. Defendants are now selling identical competing farm products as those sold by Growers to customers, including without limitation, customers of Growers, using Growers' trademarks, information, assets, and goodwill.

3. In addition, Rietveld and Rosenberg terminated their employment with Growers on or about June 30, 2014, and became exclusive sales agents for Growers through approximately April 17, 2015. When Rietveld and Rosenberg' exclusive sales agent relationship with Growers terminated on or about April 17, 2015, Rietveld and Rosenberg copied and cloned Growers' information stored on Growers' computers, retained Growers' customer lists, customer order information, pricing, accounting information contained in the software program, Quickbooks, and other financial information, and refused to return to Growers all of Growers' computers, customer files, and information, including without limitation, customer lists, customer information, financial records, and Growers' Confidential Information/Trade Secrets. Rietveld and Rosenberg then deleted virtually all of Growers' information and software and wiped clean the few computers returned to Growers.

4. Rietveld and Rosenberg, upon usurping Growers' Marks and Growers' property, including its Confidential Information/Trade Secrets and other critical business information, in

2

violation of their fiduciary duties to Growers and as part of their scheme to defraud Growers,

issued their May 20, 2015, correspondence attached hereto and incorporated herein as ***Exhibit 1***

to customers of Growers in an effort to trade on the goodwill and reputation of Growers and to

tortuously interfere with Growers' business relationships with its customers.

5. Rietveld and Rosenberg's conduct constitutes breaches of their fiduciary duties to

Growers and Paarlberg Farms and misappropriation of Growers' Confidential Information/Trade

Secrets.

6. By usurping and using Growers' Marks to operate Partners and Hybrids, Rietveld and

Rosenberg intended to and have caused actual confusion among Growers' customers, suppliers,

and the general public in an effort to wrongfully obtain and unfairly trade on the goodwill and

reputation Growers has developed at great expense over its in excess of 80 years of operation.

## THE PARTIES

7. Growers is an Illinois corporation formed by a group of farming families in 1933 that

transacts business in the State of Illinois, including without limitation, DuPage and Cook

Counties, Illinois, and elsewhere.

8. Paarlberg Farms is an Indiana sole proprietorship owned and operated by James

Paarlberg that transacts business in the State of Illinois and elsewhere. At all times relevant,

James Paarlberg has been a $1/5^{th}$ shareholder and director in Growers until he acquired all of the

shares in Growers in January and February 2015. Since the formation of Partners in 2006 and

continuing to present, Paarlberg Farms has owned a $1/6^{th}$ interest in Partners.

9. Rietveld is an individual residing in Bourbonnais, Illinois. From 2001 through

approximately 2004 Rietveld was a marketing manager and shareholder of Growers until all of

his shares in Growers were redeemed in 2004 and he became the general manager for Growers

3

through June 30, 2014. After June 30, 2014, Rietveld became an exclusive sales agent for Growers as described hereinbelow. At all times relevant herein Rietveld was the Manager of Partners. From 2004 to present, Rietveld has not been a shareholder or directors of Growers. Rietveld and his sister, Rosenberg, jointly owned a 1/6th interest in Partners from the formation of Partners in 2006 until May or June 2014 when they acquired (under fraudulent circumstances) an additional 4/6th interest in Partners. Rietveld is also the Manager and owner of Hybrids.

10. Partners is an Illinois limited liability company formed in 2006 with its principal place of business in Bourbonnais, Illinois, and transacts business in DuPage County, Illinois, and elsewhere. Prior to approximately May or June, 2014, Partners did not actively operate and did not sell any products or services. Prior to approximately May or June, 2014, Partners was an affiliate of Growers, with the five shareholders and directors of Growers each beneficially owning a 1/6th interest in Partners through companies they each respectively owned and controlled, including without limitation, Paarlberg Farms. Rietveld and Rosenberg jointly owned the remaining 1/6th interest in Partners until they acquired (under fraudulent circumstances) an additional 4/6ths interest in Partners in May or June 2014. Currently, Rietveld and Rosenberg jointly own a 5/6ths interest in Partners with Paarlberg Farms owning the remaining 1/6th interest in Partners.

11. Hybrids is an Illinois limited liability company with its principal place of business in Bourbonnais, Illinois. Hybrids was formed by Rietveld in 2013, and upon information and belief transacts business in DuPage County, Illinois, and elsewhere.

12. Rosenberg is an individual residing in Bradley, Illinois, was an employee and subsequently an exclusive sales agent for Growers as described hereinbelow, and is the sister of Rietveld. Rosenberg has never owned any shares in Growers. Rosenberg, jointly with her

brother, Rietveld, owned a 1/6th interest in Partners until May or June 2014 when they acquired (under fraudulent circumstances) an additional 4/6ths interest in Partners.  Upon information and belief, Rosenberg is also an employee of Hybrids.

## JURISIDICTION AND VENUE

13. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, as it involves claims arising under the Lanham Act, 15 U.S.C. §§ 1051, et. seq. and Computer Fraud and Abuse Act, 18 U.S.C. §1030.  This Court has supplemental jurisdiction over claims in this action pursuant to 28 U.S.C. § 1367.

14. This Court has personal jurisdiction over Rietveld and Rosenberg because they reside in Illinois.  The Court has personal jurisdiction over Partners and Hybrids as each of them was organized in the State of Illinois, has its principal place of business in Illinois, and transacts business in the State of Illinois, including without limitation, DuPage County, Illinois, and elsewhere.

15. Venue is proper in this judicial district under 28 U.S.C. §1391(b), because Partners and Hybrids reside within the Northern District of Illinois pursuant to 28 U.S.C. §1391(c)(2), particularly as Partners and Hybrids transact business in the Northern District of Illinois, and because part of the events giving rise to the claims occurred within the Northern District of Illinois.  The damage to Growers described herein takes place in part in the Northern District of Illinois and throughout the United States.

## COMMON ALLEGATIONS

**Growers and its "Dutch Valley," "Dutch Valley Growers," and Windmill Marks**

16. Growers was formed in 1933 by a group of farming families who grew onion sets to sell to retailers and wholesalers. Growers has sold onion sets, or onion bulbs intended for planting, to retailers and wholesalers continuously since its formation in 1933.

17. Since at least the 1990's, in addition to selling onion sets, Growers has purchased and resold onions, garlic, elephant garlic, shallots, seed potatoes, asparagus, strawberry roots, berries, fruit, vegetables, root cuttings and crowns, and other crop seed and bulb products (collectively with the onion sets, "Growers' Products") to retailers and wholesalers throughout the United States.

18. Since at least the 1990's, Growers has also sold hybrid and open pollinated bulb products to commercial farming operations.

19. Growers has operated using the trade names "Dutch Valley" and "Dutch Valley Growers" to market and sell its products in interstate commerce continuously since the formation of Growers in 1933.

20. In 2002, Growers registered and began using the domain name, "dutchvalleygrowers.com" to market and sell Growers' Products on behalf of Growers.

21. Since at least 1996, Growers has used a windmill logo design in connection with Growers' marketing and sale throughout the United States of Growers' Products.

22. On or before 2006, Growers modified its windmill logo design to the design set forth on *Exhibit 2* attached hereto and incorporated herein which Growers has continued to use to the present date to market and sell Growers' Products throughout the United States.

23. The trade names, "Dutch Valley Growers" and "Dutch Valley" and the windmill logo design attached as *Exhibit 2* constitute Growers' common law trade names and marks ("Growers' Marks").

24. Growers has developed substantial and valuable goodwill in Growers' Marks through advertising, industry recognition, and an over eighty year long history of providing high quality products using such names. As a result, Growers has developed widespread recognition and secondary meaning in the Growers' Marks throughout the United States, all of which has inured and continues to inure to Growers' substantial benefit.

25. As a result of Growers' decades long operations using Growers' Marks marketing and selling Growers' Products throughout the United States and Growers' expenditure of substantial sums to market and advertise Growers' Products throughout the United States using Growers' Marks, including without limitation, approximately $1,000,000.00 since 2001, Growers' Marks have become famous and are widely recognized by the general consuming public.

26. Growers has generated over $48,000,000.00 in revenue since approximately 2001.

**Rietveld, Rosenberg, and the Formation of Partners**

27. From approximately 2004 through June 30, 2014, Rietveld was employed by Growers as its general manager and was responsible for and controlled the day-to-day financial and business operation of Growers, including without limitation, maintaining Growers' books and records, managing Growers' accounts, purchasing products and supplies, managing inventory, managing employees, and filling orders. Prior to becoming general manager of Growers, Rietveld was employed from 2001 through approximately 2004 as a marketing manager for Growers.

7

28. At the time Rietveld commenced his employment with Growers, Rietveld suggested that Growers relocate its sales offices to real estate owned by Rietveld.

29. On or about 2001, at Rietveld's suggestion, Growers relocated its sales offices from South Holland, Illinois, to a location owned by Rietveld in Bourbonnais, Illinois.

30. From approximately 1994 through June 30, 2014, Rosenberg was employed by Growers as its bookkeeper and secretary and was responsible for maintaining Growers' ledgers, bank accounts, and payables, and issuing checks on behalf of Growers.

31. Since 2004, neither Rietveld nor Rosenberg had any ownership interest in Growers.

32. On or about February 22, 2006, Partners was formed by the shareholders and directors of Growers for the intended purpose of selling certain farm products other than onions and onion sets, particularly, garlic, elephant garlic, shallots, seed potatoes, asparagus, strawberry roots, berries, fruit, vegetables, root cuttings and crowns, and other crop seed and bulb product that Growers had been selling since at least the 1990's.

33. From the time Partners was formed in 2006 through approximately May or June, 2014, each of the five shareholders and directors of Growers beneficially owned a $1/6^{th}$ interest in Partners through companies they owned and controlled, including without limitation, Paarlberg Farms, with Rietveld and Rosenberg, jointly, owning the remaining $1/6^{th}$ interest.

34. From the time Partners was formed in 2006 through approximately May or June 2014, Partners was an affiliate of Growers under the common control of Growers' shareholders and directors who beneficially owned 5/6ths of the interests in Partners.

35. Since its formation in 2006, Rietveld was the Manager of Partners and was responsible for the day to day operation of Partners and for maintaining Partners' books and records and accounts.

8

36. Since the formation of Partners in 2006, Rosenberg was employed as the bookkeeper for Partners.

37. Partners never operated as originally intended and did not actually sell any products whatsoever, including without limitation, onion sets, onions, garlic, elephant garlic, shallots, seed potatoes, asparagus, strawberry roots, berries, fruit, vegetables, root cuttings and crowns, and/or other crop seed and bulb products to commercial farming operations, retailers, wholesalers, or the public.  Prior to approximately May or June 2014, all onion sets, onions, garlic, elephant garlic, shallots, seed potatoes, asparagus, strawberry roots, berries, fruit, vegetables, root cuttings and crowns, and other crop seed and bulb products were sold by Growers using Growers' Marks pursuant to Growers' purchase orders and invoices.

**Rietveld's Unauthorized Registration of Growers' Marks in Partners' Name**

38. On or about August 2011, Rietveld, unbeknownst to and without authority from the shareholders or directors of Growers and/or the other Members of Partners, retained counsel to register Growers' Marks in the name of Partners.

39. In February, 2012, Rietveld, unbeknownst to and without authority from the shareholders or directors of Growers and/or the other Members of Partners, caused the trademark applications attached hereto and incorporated herein as *Exhibit 3* to be filed with the United States Patent and Trademark Office for registration of the Growers' Marks in the name of Partners ("Trademark Applications").

40. In each of the Trademark Applications, Rietveld, unbeknownst to and without authority from the shareholders or directors of Growers and/or the other Members of Partners, intentionally used specimen from Growers' product tags to improperly evidence Partners' use of

such marks. Each of the product tags attached to the application are marked with Growers' name, "Dutch Valley Growers, Inc." and identify Growers' website.

41. Each of the Trademark Applications filed by Rietveld for "Dutch Valley," "Dutch Valley Growers," and the windmill logo marks contain false statements known by Rietveld to be false when made, in particular, that Partners was the owner of such marks, that Rietveld was "properly authorized to execute the application on behalf of the applicant," that "no other person, firm, corporation, or association has the right to use the mark in commerce," and that the statements made in the applications are true.

42. Growers owned the "Dutch Valley," "Dutch Valley Growers," and windmill marks, the specimen provided by Rietveld were Growers' product tags used by Growers to market and sell Growers' Products, and Rietveld registered such marks on behalf of Partners without any knowledge or consent of the directors or shareholders of Growers who also owned 5/6ths of the outstanding interests in Partners.

43. On September 18, 2012, Certificates of Registration were issued to Partners for the windmill logo (Registration No. 4,209,580) and "Dutch Valley" (Registration No. 4,209,656) as set forth on **Exhibit 4** attached hereto and incorporated herein.

44. On February 5, 2013, a Certificate of Registration was issued to Partners for "Dutch Valley Growers" as set forth on **Exhibit 5** attached hereto and incorporated herein.

45. The Certificate of Registration for "Dutch Valley" lists Partners' date of first use of December 31, 1968, notwithstanding that such date predates the existence of Partners by nearly forty years.

46. Each of the "Dutch Valley," "Dutch Valley Growers," and windmill logos registered to Partners are identical to Growers' Marks, particularly as Rietveld on behalf of Partners' used Growers' Marks to obtain such registrations.

47. At the time of Partners' trademark registration, Partners had never marketed nor sold any product, including without limitation, onion sets, onions, garlic, elephant garlic, shallots, seed potatoes, asparagus, strawberry roots, berries, fruit, vegetables, root cuttings and crowns, and/or other crop seed and bulb products.

48. Partners' application and registration of the Growers' Mark is without Grower's knowledge or consent and without the knowledge or consent of the other Members of Partners.

49. Each of the false statements contained in the Trademark Applications were material to the determination to grant the Trademark Applications, particularly as the false statements related to the identity of the owner of Growers' Marks and evidence use of such marks.

50. The false statements contained in the Trademark Applications were intended by Rietveld to deceive and did deceive the United States Patent and Trademark Office, particularly as Rietveld, as the general manager of Growers and manager of Partners, was intimately familiar with the business of Growers and its use of Growers' Marks and the fact that Partners did not sell any products or services using Growers' Marks and, based upon the false statements made by Rietveld in the Trademark Applications, the Certificates of Registration were ultimately issued in the name of Partners based upon Growers use of the marks.

51. Rietveld willfully registered Growers' Marks in the name of Partners in order to obtain control over the marks owned by Growers, a company in which Rietveld held no interest. Instead, Rietveld placed those registrations into Partners, a company in which Rietveld, together with Rosenberg, was a 1/6th owner, in which Rietveld was the sole Manager with control over

11

the day to day operations, from which Rietveld and Rosenberg benefitted from the profits generated using such marks, and a business in which Rietveld ultimately gained majority control to compete directly with Growers and to sell identical products to the customers of Growers.

### Rietveld and Rosenberg's Failure to Properly Maintain the Accounts for Growers and Partners

52. Since the formation of Partners in 2006, Rietveld and Rosenberg failed to properly maintain separate books and records for Growers and Partners.

53. Since the formation of Partners in 2006, Rietveld and Rosenberg allocated revenue from Growers, a company in which Rietveld and Rosenberg had no ownership interest, to Partners, a company in which Rietveld and Rosenberg jointly owned a 1/6th interest. As a result, the revenues and profits of Growers were understated while the revenues and profits of Partners were overstated.

54. Since the formation of Partners, Rietveld and Rosenberg also failed to reconcile accounts for Partners and Growers causing further errors in the accounting and reporting of Partners and Growers' finances.

55. In approximately 2011 or 2012, Rietveld established a new Quickbooks database to keep track of inventory for Growers.

56. Notwithstanding the implementation of Rietveld's new Quickbooks database to track inventory, Rietveld and Rosenberg failed to properly track inventory for Growers, including without limitation, failing to enter inventory purchases as costs and instead reflecting such inventory purchases in another asset category thereby double counting inventory assets, failing to properly allocate inventory costs, and failing to reconcile inventory and inventory costs set forth in the Quickbooks database with the actual inventory and inventory costs.

12

57. As a direct result of Rietveld and Rosenberg's failure to properly maintain the books and records of Partners and Growers and failure to properly track inventory and inventory costs for Growers and Partners, Rietveld and Rosenberg overstated profits for Growers in 2013 by approximately $360,000.

58. In July or August 2013, at the end of Growers' fiscal year, Growers distributed excess profits to its shareholders as a result of Rietveld and Rosenberg's erroneous accounting of Growers' profits.

59. As a result of Rietveld and Rosenberg's failure to properly maintain the books and records of Growers, in approximately August 2013, Growers overdrew its bank account by over $300,000.00.

60. On or about August 27, 2013, unbeknownst to the shareholders or directors of Growers and without approval from the shareholders and/or directors of Growers, Rietveld borrowed $300,000.00 from his father on behalf of Growers to cover the shortfalls caused by the accounting errors and overdrawing of Growers' bank account and to conceal such accounting errors from the shareholders and directors of Growers.

61. On or about November 2013, Rietveld and Rosenberg issued to the shareholders and directors of Growers financial statements for Growers' fiscal year 2013 which showed a significantly higher than usual amount of inventory and notes payable.

62. In November 2013, the shareholders and directors of Growers began questioning Rietveld and Rosenberg's accounting for Growers and Partners.

63. On or about January 2014, Growers' bank called a default on Growers' note with the bank for the line of credit extended by the bank to Growers.

64. On or about February 17, 2014, the shareholders and directors of Growers and Members of Partners met with accountants to discuss Rietveld and Rosenberg's mismanagement of finances, the overstatement of Growers' inventory, notes payable, and profits, the bank loan default, maintaining Growers separate from Partners, and how to correct the accounting errors caused by Rietveld and Rosenberg.

65. On or about February 22, 2014, the shareholders and directors of Growers and Members of Partners held a meeting at which several of the shareholders and directors of Growers who are also beneficial owners of the Members of Partners decided that they would not be participating in the businesses after the 2014 season.

66. On or about March 10, 2014, the shareholders and directors of Growers and Members of Partners discussed their options for continuing Growers' and Partners' businesses in light of several of the shareholders' and Members' desire not to participate further in the businesses.

**Rietveld and Rosenberg's Actions to Acquire Ownership of Partners and to Conceal Registration of Growers' Marks in Partners' Name**

67. On or about March 12, 2014, at a meeting of the shareholders and directors of Growers and Members of Partners, Rietveld told the other shareholders and directors and Members that he and Rosenberg needed ownership of Partners solely in order to maintain health insurance for Rietveld and Rosenberg.

68. At the March 12, 2014 meeting, in connection with Rietveld's request to own Partners solely to maintain health insurance, when the shareholders and directors of Growers and Members of Partners were informed that Partners owns nothing, Rietveld and Rosenberg failed to inform the shareholders and directors of Growers and Members of Partners that in fact,

Rietveld registered Growers' Marks in Partners' name and Growers' Marks continued to be held in Partners' name.

69. At the March 12, 2014, meeting, Rietveld and Rosenberg intentionally concealed from the shareholders and directors of Growers and Members of Partners that Rietveld had registered Growers' Marks in Partners' name. Neither Rietveld nor Rosenberg responded to the inquiry by the shareholders and directors of Growers and Members of Partners as to what assets Partners owned nor clarified that, in fact, the Growers' Marks were held in Partners' name.

70. On or about April 4, 2014, at a meeting of the shareholders and directors of Growers and Members of Partners, Rietveld submitted to the Members of Partners an Assignment of Membership Interest in Partners attached hereto and incorporated herein as *Exhibit 6.*

71. Nothing in the Assignment of Membership Interest in Partners discloses to the Members of Partners, who were also all of the shareholders and directors of Growers, that Partners has any assets, particularly the trademark registrations for Growers' Marks.

72. At the April 4, 2014, meeting of the shareholders and directors of Growers and Members of Partners, in connection with the presentation of the Assignment of Membership Interests in Partners by Rietveld and Rosenberg, when the shareholders and directors of Growers and Members of Partners were told that Partners did not own any assets, neither Rietveld nor Rosenberg informed the shareholders and directors of Growers and Members of Partners that in fact, Rietveld registered Growers' Marks in Partners' name and Growers' Marks continued to be held in Partners' name.

73. At the April 4, 2014, meeting, Rietveld and Rosenberg, intentionally concealed from the shareholders and directors of Growers and Members of Partners that Rietveld had registered Growers' Marks in Partners' name, particularly as neither Rietveld nor Rosenberg responded to

the inquiry as to what assets Partners owns nor clarified that, in fact, Growers' Marks were held in Partners' name.

74. In connection with the Assignment of Membership Interest in Partners, Rietveld failed to disclose to any of the Members of Partners, and to the shareholders and/or directors of Growers, that Rietveld had registered Growers' Marks in Partners' name, and that Partners continued to hold the trademark registrations for Growers' Marks in Partners' name.

75. Paarlberg Farms never executed the Assignment of Membership Interest in Partners and never agreed to transfer its interest in Partners to Rietveld or any other party.

76. On or about May or June 2014, the other Members of Partners except Paarlberg Farms executed the Assignment of Membership Interest in Partners to transfer their respective interests in Partners to Rietveld.

77. On or about May or June 2014, when Rietveld and Rosenberg acquired (under fraudulent circumstances) an additional $4/6^{ths}$ interest in Partners, Partners and Growers ceased being affiliated entities and any implied authority Partners, which was non-operational, may have had to use Growers' Marks terminated, particularly as the shareholders and directors of Growers never consented to registering Growers' Marks in Partners name and Growers and Partners ceased being under common control of the shareholders and directors of Growers.

### Rietveld and Rosenberg's Termination of Their Employment with Growers and Misappropriation of Growers' Critical Business Information

78. On or about June 4, 2014, Rietveld and Rosenberg informed the shareholders and directors of Growers that they were terminating their employment with Growers effective June 30, 2014.

79. On or about June 7, 2014, the shareholders and directors of Growers and Members of Partners held a meeting with Rietveld and Growers' accountants to identify the assets and expenses of Growers and Partners, attempting to reconcile the accounting errors caused by Rietveld and Rosenberg, and to prepare year-end financial statements for Growers and Partners.

80. During the June 7, 2014, meeting, Rietveld went through the listing of assets of Growers and Partners in detail. At no point during the June 7, 2014 meeting did Rietveld disclose to the accountants or the other shareholders and directors that Growers' Marks had been registered in Partners' name and were held by Partners.

81. Growers has developed and maintained over the years critical and extensive confidential customer information, including without limitation, customer lists, customer contact information, customer product and service needs and requirements, customer purchase history, including products and services ordered, supplier costs, pricing and markups for customers, pricing worksheets and proposals tendered to customers and prospective customers and other critical customer data and information which were maintained on Growers' computer system, particularly its Quickbooks database and in customer files which are confidential information and trade secrets of Growers used in Illinois and elsewhere within the meaning of 765 ILCS 1065/2 ("Confidential Information/Trade Secrets").

82. Growers has spent significant time and resources over its in excess of 80 years of operation to develop and maintain its customers and customer information, including its Confidential Information/Trade Secrets.

83. At all times relevant since approximately 2001, Growers uses a Quickbooks computer database to store and maintain certain confidential information including, without limitation,

17

Growers' customer list, contact information for all of Growers' customers, pricing information, customer order history, and all of Growers' financial information.

84. Growers' computers and its Quickbooks database were each password protected and accessible only to Growers' employees who worked in Growers' office. Each employee with access to Growers' Quickbooks database were issued a separate password and limited permissions to use different functions of the Quickbooks database on a need-to-know basis.

85. In addition to the Quickbooks database, Growers maintained a paper file for each customer that contained confidential information of Growers consisting of the purchase orders and invoices and contact information for such customer, product pricing and markups for the customer, and notes regarding the conversations and negotiations with the customer, including customer's needs, requirements and order history.

86. The confidential information in Growers' customer files was filed and maintained by Rosenberg and kept in a file cabinet in the upstairs portion of Growers' office, accessible only to a couple of Growers' office employees including Rosenberg.

87. Growers' customer files and computer systems were all kept in Growers' offices which were not generally open to the public and were locked each night. Only Rietveld and Rosenberg had keys to Growers' offices.

88. On or about June 11, 2014, after announcing that they were terminating their employment with Growers, Rietveld and Rosenberg, unbeknownst to and without authority from the shareholders and/or directors of Growers, began copying and transferring Growers' QuickBooks files to a computer used by Rosenberg.

89. On or about June 26, 2014, James Paarlberg on behalf of Growers went to Growers' office to pick up Growers' property, including without limitation, computers, customer files and information, office furniture and equipment, and supplies.

90. At the time James Paarlberg went to Growers' office on June 26, 2014, Rietveld refused to return all of Growers' property to Growers, including without limitation, several of Growers' computers and all of Growers' customer files and information. Rietveld objected to returning the computers claiming that he had certain personal information on the computers that he needed to remove first.

91. On June 26, 2014, Rietveld did provide Growers with storage cabinets from which all of the customer files had been removed and a few computers used by two employees, Rende and Cindy, that did not contain any customer information.

92. On June 27, 2014, Growers sent Rietveld the e-mail attached hereto and incorporated herein as *Exhibit 7* requesting Rietveld to return to Growers at the close of business on June 30, 2014, the remaining Growers' property, including without limitation, computers and file cabinets with customer information.

93. On or about June 27, 2014, unbeknownst to and without authority from the shareholders and/or directors of Growers, Rietveld contacted an IT company to plan to wipe Growers' computers.

94. On or about June 30, 2014, unbeknownst to and without authority from the shareholders and/or directors of Growers, Rietveld cloned Growers' iMac computers used by Rietveld and Rosenberg, including Growers' Quickbooks database.

95. Notwithstanding the termination of their employment with Growers effective June 30, 2014, Rietveld and Rosenberg paid their own compensation from Growers through July 2014.

**Rietveld and Rosenberg's Transition to Exclusive Sales Agents**

96. At the end of June and early July 2014, the shareholders and directors of Growers became concerned that they would not have adequate time to sell Growers' Products which are harvested in July and August, for which customers place orders in July and August, and which are shipped beginning early September, particularly as Rietveld had all of Growers' customer information.

97. In approximately July or early August, 2014, the other shareholders and directors of Growers, without the knowledge or agreement of Paarlberg Farms or its owner, approached Rietveld and Rosenberg to request that Rietveld and Rosenberg continue as exclusive sales agents for Growers through approximately April 17, 2015, to finish the current season. On or about July or early August 2014, Rietveld and Rosenberg agreed to act as exclusive sales agents for Growers through approximately April 17, 2015.

98. As exclusive sales agents for Growers, Rietveld and Rosenberg were responsible for soliciting sales exclusively on behalf of Growers.

**Rietveld and Rosenberg's Operation of Partners and Hybrids and Infringing Use of Growers' Marks**

99. On January 29, 2013, Rietveld and Rosenberg, without the knowledge or consent of the shareholders or directors of Growers and/or Members of Partners, formed Hybrids to sell hybrid bulb products to commercial growers which is in direct competition with Growers.

100.     Beginning after Rietveld and Rosenberg terminated their employment relationship with Growers on June 30, 2014 and became sales agents exclusively for Growers, Rietveld and Rosenberg, without the knowledge or consent of the shareholders or directors of Growers and other Members of Partners began operating Partners to sell products competitive with Growers'

Products to retailers, wholesalers, and commercial farming operations, including without limitation, to customers of Growers.

101.     In connection with his operation of Partners beginning in at least July 2014, Rietveld and Rosenberg, without the knowledge or consent of the shareholders and/or directors of Growers, used "Dutch Valley," "Dutch Valley Growers," and the windmill logo on behalf of Partners to market and sell products competitive with Growers' Products, including without limitation, onion sets, onions, garlic, elephant garlic, shallots, seed potatoes, asparagus, strawberry roots, berries, fruit, vegetables, root cuttings and crowns, and other crop seed and bulb products, to retailers, wholesalers, and commercial farming operations, including without limitation, to customers of Growers.

102.     On or about November 4, 2014, without the knowledge or consent of the shareholders or directors of Growers, Rietveld and Rosenberg on behalf of Partners sent to customers of Growers the correspondence attached hereto and incorporated herein as ***Exhibit 8*** under the names of both Growers and Partners with only the Rietveld and Rosenberg's e-mail addresses for Partners included.

103.     The November 4, 2014, correspondence is and was intended to be confusing in that it references both Growers and Partners in the heading, including using "Dutch Valley Growers' trade name, and discusses product offerings using the terms, "we" and "our" implicitly referencing both Partners and Growers, states that "[a]ll products from the two companies can be ordered and shipped together," and encloses price lists for Growers and Partners containing Growers' Marks.

104.     Upon information and belief, in approximately Fall or Winter of 2014, Rietveld and Rosenberg, on behalf of Partners, sent to customers of Growers a price list for Spring 2015

under the name, "Dutch Valley Partners" for shallots, garlic, elephant garlic, prepack bulbs, seed potatoes, and asparagus roots, all products Growers previously sold to such customers.

105.     On or about March 30, 2015, Partners shipped potato pots, shallots, garlic, and seed potatoes to Granny's, a customer of Growers, using a packing slip issued by Partners and product labels for Growers which contain Growers' Marks.

106.     Prior to March 13, 2015, Partners issued to customers, including customers of Growers, including without limitation, Village Ace Hardware in Sandwich, Illinois, the Product Order Form attached hereto and incorporated herein as *Exhibit 9* containing Growers' Marks for such customers to place orders with Partners ("Partners' Product Order Form").

107.     On May 20, 2015, Rietveld and Rosenberg, on behalf of Partners, sent the correspondence attached hereto and incorporated herein as *Exhibit 1* to customers of Growers falsely suggesting that Growers discontinued providing prepackaged products and then referencing Rietveld and Rosenberg's prior relationship with Growers and their subsequent operation of Partners to conduct the same business as Growers.

108.     Partners' unauthorized use of Growers' Marks in connection with advertising, marketing, offering, and selling Partners' products, which are identical to Growers, to customers of Growers allows and will continue to allow Partners to receive the benefit of the goodwill established by Growers at great effort, labor, and expense, and to gain acceptance of Partners' products based not on the quality of those products and the related services, but on the reputation and goodwill of Growers and Growers' Products.

109.     Partners' unauthorized use of Growers' Marks in connection with advertising, marketing, offering, and selling Partners' products including to Growers' customers deprives Growers of Growers' ability to control consumer perception of the quality and source of products

22

advertised, marketed, offered, and sold under Growers' Marks, and places the valuable reputation and goodwill of Growers developed over in excess of 80 years into the hands of Partners.

110.     Partners' registration and use of "Dutch Valley," "Dutch Valley Growers," and the windmill logo for onion sets, onions, garlic, elephant garlic, shallots, seed potatoes, asparagus, strawberry roots, fruit, vegetables, root cuttings and crowns, and other crop seed and bulb products is likely to cause and has caused confusion, mistake, and deception with Growers' use of Growers' Marks for Growers' Products, including without limitation, confusion about the source, nature, and quality of the products marketed and sold by Growers and Partners using those marks.

111.     Customers and vendors of Growers have actually been confused by Partners' registration and use of "Dutch Valley," "Dutch Valley Growers," and the windmill logo, including without limitation, as follows:

     a.     On or about August 16, 2014, a vendor of Growers, I Love Produce, LLC, sent Growers an invoice for Elephant Garlic Cloves purchased by Rietveld on behalf of Partners.  Growers did not purchase Elephant Garlic Cloves from I Love Produce, LLC for August 2014.

     b.     On or about October 16, 2014, ERME, a farm products supplier, sent an invoice directed to Partners and mailed to the address used by Growers notwithstanding that ERME has been a supplier of Growers for in excess of 14 years.

     c.     On or about March 13, 2015, Growers' customer, Village Ace Hardware, e-mailed Growers to place an order using Partners' Product Order Form.

    d.   On or about August 13, 2015, Owen Nursery & Florist sent an order directed to "Dutch Valley Growers" but intended for Partners.

    e.   On August 21, 2015, BWI, a customer of Growers, e-mailed to Growers at kathy@dutchvalleygrowers.com, Purchase Orders addressed to Partners for onion, garlic, and shallot products; and

    f.   On or about September 2015, Brandon Farms placed an order with Rosenberg on behalf of Partners that was intended to be made with Growers.

112.     On August 22, 2015, Rosenberg on behalf of Partners sent the e-mail attached hereto and incorporated herein as *Exhibit 10* to Growers requesting that Growers forward to Partners the mail addressed to "Dutch Valley Partners, Dutch Valley Hybrids, Dutch Valley Farms, etc." that are "mistakenly" mailed to Growers' address.

113.     Defendants' conduct as set forth above constitutes trademark infringement in violation of the Lanham Act, 15 U.S.C. §§ 1120 and 1125(a) and (c).

114.     Partners has used Growers' Marks despite having actual and constructive notice of Growers' common law rights, and has refused to discontinue such infringing use despite receiving demands from Growers that Partners do so.  Consequently, this is an exceptional case under 15 U.S.C. §1117(a), warranting an award of up to treble damages and Growers' attorney's fees in this matter.

**Rietveld and Rosenberg's Failure to Return Growers' Property**

115.     On April 16, 2015, approximately the day before Rietveld and Rosenberg's exclusive sales agent relationship with Growers was to terminate, James Paarlberg on behalf of Growers e-mailed Rietveld that Growers would be picking up all of Growers' property, including

without limitation, business records, office files, computers, office equipment, and furniture on April 17, 2015.

Attached hereto and incorporated herein as *Exhibit 11* is a true and correct copy of the April 16, 2015 e-mail to Rietveld.

116.     On or about April 17, 2015, Rietveld and Rosenberg hired an IT company to copy Growers' Quickbooks database.

117.     On April 17, 2015, when Growers personnel arrived to pick up Growers' property from Rietveld and Rosenberg at the offices used by Growers, Rietveld and Rosenberg refused to allow Growers' personnel into the office used by Growers.  Instead, Rietveld and Rosenberg piled on a pallet the property they were willing to return to Growers.

118.     On April 17, 2015, Rietveld and Rosenberg returned to Growers 5 iMac computers, a MacBook ipad, and a time capsule hard drive.  Three of the five iMac computers and the MacBook ipad returned to Growers had been completely wiped of any of Growers' information and all software.  The fourth iMac computer had not been used since approximately June 30, 2014.  The fifth iMac computer had been nearly completely wiped and included some software but none of Growers' information.  The hard drive contained only out of date back-ups.

119.     On April 17, 2015, Rietveld and Rosenberg failed and refused to provide Growers with Growers' server that contained all of Growers' information, the 2012 iMac used by Rosenberg, the 2010 iMac used by Rende, the 2013 MacBook Air used by Rietveld, the 2008 MacBook Pro used by Rosenberg, the MacBook Pro used by Carrie, and an ipad.

120.     On April 17, 2015, when Growers' personnel arrived to pick up Growers' property from Rietveld and Rosenberg, an IT personnel hired by Rietveld and Rosenberg provided Growers with a thumb drive containing a copy of Growers' QuickBooks records and

25

limited Growers' access to Growers' own records in that administrative functionality was not provided to Growers. The thumb drive provided to Growers did not contain all of Growers' financial data.

121.     Rietveld and Rosenberg retained the original Growers' QuickBooks records for Defendants and their companies Partners and Hybrids, without Growers' authority and notwithstanding that Rietveld and Rosenberg no longer had any relationship to Growers. Moreover, Rietveld and Rosenberg without authority from Growers retained and refused to provide Growers with all of Growers' equipment, customer files, customer lists, and all of Growers' financial data and records developed by Growers over its over 80 years of operation, and in particular, failed and refused to return to Growers the following property:

| iMac (used by Rosenberg) | 27 screen size | 2.9 GHz Intel i5 Late 2012 |
| iMac (used by Rende) | 27 screen size | 2.93 GHz Intel i7 Mid 2010 |
| MacBook Air (used by Rietveld) | 13 screen size | 1.7GHz          Mid 2013 |
| MacBook Pro (used by Rosenberg) Early 2008 | 15 screen size | 2.4 GHz Intel Core 2 Duo |
| MacBook Pro (used by Carrie)     15 screen size | | 2.4 GHz Intel Core 2 Duo Early 2008 |

Ipad

2 Tall storage cabinets

1 Desk (used by Rende)

1 Microwave

1 Small Refrigerator

1 Keurig Coffee Maker

2 Vacuums (one is a Dyson)

1 Laminator

1 Large Zebra Printer

1 Lateral Filing Cabinet 3 Drawer

1 Large Shredder

2 Desktop Shredders

2 Desktop Printers

Foam for boxes

Phone system

Radios 2-way equipment with repeater

Banding equipment for strapping VZ crates and the supplies

Ethernet switches

Steel shop desks

Office (desk and chairs used by Rietveld)

Horizontal filing cabinet

Storage cabinet

Allround flat conveyer 100x350 (ran from topper to roller grader)

Frequency drives on the DVG fans that were not included on Tim's fans

3 Frequency drivers missing for topper

5 low pressure fans and burners

Long ERC flat conveyer (21x280)

Pallet of motors which included a topper motor

Staplers for the pack machine

All of the manuals for the equipment

DVG signs

Remote for box tipper

Telephone Numbers:  800/245-8272; 815/937-8812 and 815/937-8909

Growers' e-mails from approximately June 25, 2014, through March 27, 2015, and from

April 1, 2015, through April 19, 2015.


("Growers' Property").

122.     On or about April 21, 2015, unbeknownst to and without authority from Growers, Rietveld caused Growers' iMac used by Rosenberg to be copied and then fully wiped.

Attached hereto and incorporated herein as *Exhibit 12* is a true and correct copy of an invoice from Stratus Digital, Inc. to Rietveld for backing up and fully wiping the iMac used by Rosenberg.

123.     As a result of Defendants' egregious conduct, and the resulting confusion to customers and suppliers, Growers and Paarlberg Farms have been and will continue to be irreparably harmed by Defendants' conduct insofar as the public has been and is continuing to be deceived as to the connection, affiliation, or relationship between Growers and products advertised, marketed, offered, and sold by Defendants on behalf of Partners and Hybrids under Growers' Marks and the value to Growers of Growers' name, marks, reputation, and goodwill will be further impaired.  Additionally, as a result of Defendants' registration and use of Growers' Marks' and the resulting confusion to customers and suppliers, and Defendants' use of Growers' customer and financial information, including without limitation, its Confidential Information/Trade Secrets, that Defendants misappropriated from Growers, Growers has lost and will continue to lose customers, sales revenue, and profits, including without limitation, its largest customer, the exact amount of which are difficult to calculate but are in excess of $500,000.00 to date.

124.     As a result of Rietveld and Rosenberg's unauthorized access of Growers' computers, including without limitation, to copy Growers' information for their own use in direct competition with Growers and to fully wipe Growers' computers, Growers has been and will continue to be irreparably harmed, particularly as Growers has been deprived of its information, including without limitation, customer information, emails to customers, financial records, and

customer lists, and has been prevented from using Growers' own information to solicit and sell

to its customers while Defendants have been and will continue to unfairly solicit and sell directly

competing products to Growers' customers using Growers' information.  As a result, Growers

has lost and will continue to lose customers, sales revenue, and profits, the exact amount of

which are difficult to calculate.

125.    Growers has suffered and will continue to suffer irreparable injury unless

Defendants are restrained (a) from using Growers' assets and information, including without

limitation, Growers' Marks, Growers' Confidential Information/Trade Secrets, Growers'

financial and customer information, and Growers' customer list to compete with Growers and is

required to return all of Growers' property, including without limitation, Growers' Marks,

Growers' Confidential Information/Trade Secrets, Growers' financial and customer information,

to Growers, and (b) from soliciting and/or selling Growers' Products to any customer of

Growers.  Without issuance of such  restraining order, Growers will be irreparably harmed

without the possibility of recovery for such harm in that Growers has been deprived of critical

information to service its customers, including without limitation, Growers' Confidential

Information/Trade Secrets, has and will continue to lose customers and prospective customers

since Defendants have and will continue to solicit and sell directly competing products on behalf

of Partners and Hybrids using Growers' information and assets, including without limitation,

Growers' Marks, Growers' Confidential Information/Trade Secrets, Growers' financial and

customer information, Growers will lose control over its names and Growers' Marks, and

Growers' Confidential Information/Trade Secrets, Growers' Marks will be further diluted and

customers further confused by Defendants' use of Growers' Marks, and Growers has and will

continue to lose profits from its customers and lost customers, and will lose its goodwill and reputation that it has developed over the last in excess of 80 years.

126.     Growers has no adequate remedy at law as damages alone cannot ensure that Growers will maintain control over the use of its names and marks, including without limitation, Growers' Marks, that Growers will maintain its relationship with its customers and suppliers, that Growers will maintain the goodwill and reputation it has nurtured over the last in excess of 80 years, and/or that Growers will retain control over its critical business information and property, including without limitation, Growers' Confidential Information/Trade Secrets.

## COUNT I

## FALSE DESIGNATION OF ORIGIN

## (15 U.S.C. §1125(a))

127.     Growers incorporates by reference paragraphs 1 through 126 of the Complaint as if fully set forth herein.

128.     Defendants' unauthorized use of Growers' Marks in connection with Partners' and Hybrids' advertising, marketing, offering, and selling of products, particularly Growers' Products, falsely suggests an affiliation or connection with, sponsorship by, or relation to Growers.

129.     Defendants' unauthorized and wrongful use of Growers' Marks is likely to cause and has caused actual confusion by Growers' and Partners' customers and suppliers as to sponsorship or authorization by Growers.

130.     Defendants' conduct as set forth above constitutes a false designation of origin of Partners' and Hybrids' products in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

131.     The intentional and willful nature of Defendants' acts complained of makes this an exceptional case under 15 U.S.C. §1117(a), warranting an award of up to treble damages and Growers' attorney's fees in this matter.

## COUNT II

## VIOLATION OF FEDERAL ANTI-DILUTION STATUTE

## (15 U.S.C. §1125(c)(1))

132.     Growers incorporates by reference paragraphs 1 through 131 of the Complaint as if fully set forth herein.

133.     Growers' Marks are distinctive and famous under Section 43(c)(1) of the Lanham Act, 15 U.S.C. §1125(c).

134.     Defendants through their acts have made unauthorized commercial use in interstate commerce of Growers' Marks after Growers' Marks became famous.

135.     Defendants' use of Growers' Marks has caused dilution of the distinctive quality of Growers' Marks by lessening the capacity of the marks to identify and distinguish Growers' Products in violation of Section 43(c)(1) of the Lanham Act, 15 U.S.C. §1125(c).

136.     Moreover, Defendants' use of the identical Growers' Marks to market Defendants' products that are identical Growers' Products, including without limitation, to customers of Growers, has blurred the association between Growers and the famous Growers'

Marks and has impaired the distinctiveness of Growers' Marks and their association with
Growers and Growers' Products by customers.

137.    Defendants have engaged in activities under Growers' Marks intended to create
an association between Partners and Hybrids and the famous Growers' Marks, particularly as
evidenced by Defendants' May 20, 2015 correspondence to customers, including without
limitation, customers of Growers, that expressly references Growers and the customers'
relationship with Growers.

138.    Defendants' use of the Growers' Marks has degraded the public's positive
associations of Growers and the Growers' Marks in violation of Section 43(c)(1) of the Lanham
Act, 15 U.S.C. §1125(c).

139.    Defendants have also engaged in activities under Growers' Marks aimed at
disparaging and tarnishing Growers' business, goodwill, reputation, and name, including sending
the May 20, 2015, letter to customers, including without limitation, customers of Growers',
stating that customers "were disappointed" with Growers' business in the prior season.

140.    Such activities have blurred customers' association of the Growers' Marks with
Growers and have tarnished and damaged the goodwill and reputation that Growers has
established in Growers' Marks, and, in particular, the significant resources it has expended to
ensure quality and availability of Growers' Products and to establish itself as a leader in
providing high quality farm products.

141.    Defendants' conduct constitutes trademark dilution in violation of 15 U.S.C.
§1125(c).

142.    Defendants have willfully intended to disparage and trade on the goodwill
associated with Growers and the famous Growers' Marks, particularly as evidenced by

Defendants' May 20, 2015, correspondence to customers, including without limitation, customers of Growers. In addition, Defendants have used Growers' Marks despite being placed on actual and constructive notice of Growers' rights to the Growers' Marks, and Defendants have refused to discontinue such use despite receiving demands from Growers that they do so. Consequently, this is an exceptional case for purposes of 15 U.S.C. §1117(a) and 15 U.S.C. §1125(c)(2), warranting an award to Growers of its attorney's fees in this matter.

## COUNT III

## FRAUDULENT REGISTRATION (15 U.S.C. § 1120)

143.      Growers incorporates by reference paragraphs 1 through 142 of the Complaint as if fully set forth herein.

144.      Rietveld through his acts, and particularly the false statements made in the Trademark Applications, procured registration in the United States Patent and Trademark Office of Growers' Marks in Partners' name.

145.      As a result of Rietveld's false and fraudulent statements made in the Trademark Applications and the issuance of the Certificates of Registration for Growers' Marks in Partners' name, Growers has and will continue to suffer damages insofar as the public has been and is continuing to be deceived as to the connection, affiliation, or relationship between Growers and products advertised, marketed, offered, and sold by Defendants on behalf of Partners and Hybrids under Growers' Marks and the value to Growers of Growers' name, Marks, reputation, and goodwill have been and will be further impaired. Additionally, Growers has lost and will continue to lose customers, sales revenue, and profits, including without limitation, its largest

customer, the exact amount of which are difficult to calculate but are in excess of $500,000 to date.

146.     Defendant's conduct as set forth above constitutes the procurement of registration by a false or fraudulent declaration or representation or by any false means in violation of Section 38 of the Lanham Act, 15 U.S.C § 1120.

147.     The intentional and willful nature of Defendant's acts complained of make this an exceptional case under 15 U.S.C. § 1117(a), warranting an award of up to treble damages and Growers' attorneys' fees in this matter.

### COUNT IV

### COMMON LAW TRADEMARK INFRINGEMENT
### AND UNFAIR COMPETITION

148.     Growers incorporates by reference paragraphs 1 through 147 of the Complaint as if fully set forth herein.

149.     Defendants' conduct constitutes deception, by means of which Partners' and Hybrids' products advertised, marketed, offered, and sold under Growers' Marks have been palmed off as being legitimately affiliated or connected with or otherwise sponsored or authorized by Growers.  As a result, the public has been deceived, and Defendants have received income and profits that, but for this deception, Defendants would not have received.  Such conduct constitutes unfair competition and trademark infringement under the common law of the State of Illinois.

150.     Growers has extensively used Growers' Marks in connection with Growers' Products.  By reason of Growers' consistent, extensive, and long-standing use, Growers' Marks

34

have become uniquely associated with Growers, and identify Growers as the source of products bearing Growers' Marks.

151.     Defendants' use of Growers' Marks has caused and are likely to cause confusion or misunderstanding, or to deceive customers, consumers, and the general public, as to the origin, sponsorship, or other association between Growers and Defendants' products promoted and sold under the Growers' Marks.

152.     By reason of the foregoing, Defendants have willfully infringed and are continuing to willfully infringe on Growers' common law rights in Growers' Marks. Defendants' unlawful conduct is greatly and irreparably damaging to Growers and will continue to irreparably damage Growers unless Defendants are restrained by this Court.  Growers is without adequate remedy at law.

## COUNT V

## DECEPTIVE TRADE PRACTICES

## (815 ILCS 510/1, et seq.)

153.     Growers incorporates by reference paragraphs 1 through 152 of the Complaint as if fully set forth herein.

154.     Growers' Marks are distinctive and famous within the industry, and as a result of Growers' long-standing  and extensive use of those marks in connection with its business and Growers' Products, these marks have become well known as being associated with Growers, and have acquired distinctiveness and secondary meaning signifying Growers.

155.     Defendants' unauthorized use of Growers' Marks in connection with Defendants' advertising, marketing, offering, and selling of Partners' and Hybrids' products falsely suggests

an affiliation or connection with, sponsorship by, or relation to Growers, and has and is likely to confuse, mislead, or deceive the public as to the source , sponsorship, approval, or certification of the products advertised, marketed, offered, or sold under Growers' Marks, or as to affiliation, connection, or association with Growers and those products.

156.     Defendants' wrongful use of Growers' Marks has caused actual confusion by Growers' customers and suppliers as to sponsorship and authorization by Growers.

157.     Defendants' conduct as set forth above constitutes deceptive trade practices in violation of 815 ILCS 510/2.

158.     Defendants have intentionally and willfully used Growers' Marks despite having actual and constructive notice of Growers' rights, and despite the likelihood that the public will be confused, misled, or deceived as to the source, sponsorship, approval, or certification of the products advertised, marketed, offered, and sold under Growers' Marks, or as to the affiliation, connection, or association with or between Growers and those products.  Consequently, this is an exceptional case under 815 ILCS 510/3 warranting an award of Growers' attorney's fees in this matter.

## **COUNT VI**

## **VIOLATION OF TRADE SECRETS ACT, 765 ILCS 1065/1 et. seq.**

159.     Growers incorporates by reference paragraphs 1 through 158 of the Complaint as if fully set forth herein.

160.     Growers has used reasonable efforts to maintain the secrecy of its Confidential Information/Trade Secrets, including without limitation, (a) limiting access to its Quickbooks database to a limited number of office employees on a need-to-know basis; (b) maintaining password protection on Growers' computer system and Quickbooks database; (c) maintaining

Growers' computer system and customer files in Growers' offices which are not generally open to the public and are locked during non-business hours. Additionally, the shareholders and directors of Growers required Rietveld, who was responsible for the day-to-day operation of Growers and for maintaining Growers books and records, to act in Growers best interests, including without limitation, safeguarding Growers property and Growers Confidential Information/Trade Secrets.

161.     Defendants acquired Growers Confidential Information/Trade Secrets, including without limitation, its Quickbook database and customer files knowing that such information was Confidential Information and Trade Secrets of Growers.

162.     On or about the end of June 2014 before the termination of Rietveld and Rosenberg's employment with Growers and again on or about April 2015 upon the termination of Rietveld and Rosenberg's relationship as exclusive sales agent for Growers, Rietveld and Rosenberg misappropriated Growers' Confidential Information/Trade Secrets for their own benefit and for the benefit of Partners and Hybrids without the knowledge or consent of Growers' shareholders and/or directors as alleged hereinabove.

163.     As a result of Defendants' misappropriation of Growers' Confidential Information/Trade Secrets, Defendants are able to sell their products and services to a well-established customer base, all of whom are customers of Growers and claim that their products and services offered through Partners and Hybrids are more suitable to customers, including without limitation, customers of Growers, as Defendants know all of Growers' customer needs and requirements, costs, pricing and other critical customer information that will permit Defendants to undercut Growers' pricing and allow Defendants to solicit such customers to

deliver the same products or services to such customers, all of which provides Defendants an unfair and improper competitive advantage over Growers.

164.     Defendants can further use Growers' Confidential Information/Trade Secrets to undercut Growers' pricing.

165.     Since Defendants terminated their employment relationship with Growers in June 2014 and continuing after Defendants terminated their relationship as exclusive sales agents for Growers, Defendants have used Growers' Confidential Information/Trade Secrets to sell Growers' products to customers including, without limitation, customers of Growers.

166.     As a result of Defendant misappropriation, Growers has suffered and will continue to suffer irreparable injury in that it has been deprived of control over its Confidential Information/Trade Secrets, including without limitation, its customer lists, Quickbooks database and customer files, and Growers relationship with its customers has been and will continue to be damaged.

167.     Rietveld and Rosenberg's employment and ownership relationship with Partners and Hybrids has resulted and continues to threaten and will inevitably result in the disclosure of Growers' Confidential Information/Trade Secrets.  As the former general manager for Growers responsible for the day-to-day operation of Growers and maintaining Growers' books and records, Rietveld had full access to all critical and confidential customer information and other Confidential Information/Trade Secrets contained in Growers' customer files and QuickBooks database, and Rietveld's egregious conduct following the termination of his employment with Growers and subsequently the termination of his relationship as exclusive sales agent for Growers, including without limitation, soliciting Growers' customers on behalf of Partners and Hybrids, Rietveld is able to claim (and has claimed) that the products and services of his

companies, Partners and Hybrids, are more suitable as Rietveld knows all of Growers customers' needs and requirements, costs, pricing and other critical customer information that would permit Defendants to undercut Growers' pricing and allow Defendants to solicit such customers to deliver the same products or services to such customers, all of which provide Defendants an unfair and improper competitive advantage over Growers.

168.     Since all of Growers Confidential Information/Trade Secrets is the type of information upon which a sales person customarily relies to convince customers of the superiority of its products and services, Rietveld's attempts to make sales on behalf of Partners and Hybrids will inevitably result in the disclosure of Growers' Confidential Information/Trade Secrets.

169.     Even if Rietveld agreed not to disclose any of Growers' Confidential Information/Trade Secrets, such an agreement would be ineffective because his egregious conduct before and after the termination of his relationship with Growers evidences the fact that Rietveld has not been forthright with Growers and intends to, has already, and will continue to inevitably use Growers Confidential Information/Trade Secrets to solicit customers on behalf of Partners and Hybrids, particularly as Rietveld misappropriated Growers' customer information for no legitimate business purpose shortly before the termination of his employment relationship and subsequently the termination of his relationship as exclusive sales agent for Growers while Rietveld was actually using Growers' customer information to solicit Growers' customers on behalf of Partners and Hyrbids.

## COUNT VII

## BREACH OF FIDCUIARY DUTY

170.     Growers incorporates by reference paragraphs 1 through 169 of the Complaint as if fully set forth herein.

171.     As employees of Growers, and subsequently as exclusive sales agents for Growers, Rietveld and Rosenberg each owed fiduciary duties of honesty, candor, and loyalty to Growers and to act in Growers' best interests.

172.     As employees of Growers, and subsequently as exclusive sales agents for Growers, Rietveld and Rosenberg each owed Growers a fiduciary duty of loyalty not to actively exploit their positions within Growers for their own personal benefit or to hinder the ability of Growers to continue its business.

173.     Rietveld and Rosenberg breached their respective fiduciary duties to Growers in one or more of the following respects:

a.   While employed by Growers as its general manager, Rietveld, using Growers' information and specimen, registered Growers' Marks, not in Growers' name, an entity in which Rietveld held no interest, but in Partners' name, the entity in which Rietveld and Rosenberg jointly held a 1/6th interest, without authority or approval from the shareholders or directors of Growers;

b.   While employed by Growers as its general manager and continuing through his relationship as the exclusive sales agent for Growers, Rietveld concealed and failed to disclose to Growers, including without limitation, the shareholders and directors of Growers, that Rietveld had registered Growers' Marks in Partners' name;

c.   While employed by Growers and subsequently while exclusive sales agents for Growers, Rietveld and Rosenberg failed to maintain separate books and records

40

for Growers and Partners and commingled Growers' and Partners' records and accounts;

d.   While employed by Growers and subsequently while exclusive sales agents for Growers, Rietveld and Rosenberg failed to properly account for the revenue, expenses, assets, and profits of Growers and commingled Growers' and Partners' accounts, and in particular, allocated to Partners, the entity in which Rietveld and Rosenberg jointly held a 1/6th interest, revenues and profits generated by Growers, the entity in which Rietveld and Rosenberg held no ownership interest;

e.   While employed by Growers, Rietveld and Rosenberg improperly distributed to the shareholders of Growers excess amounts in 2013 and caused Growers to overdraw its bank account;

f.   While employed by Growers and without the knowledge or approval of the shareholders and/or directors of Growers, Rietveld borrowed money on behalf of Growers to cover Rietveld and Rosenberg's accounting errors, including without limitation, $300,000 borrowed from Rietveld and Rosenberg's father on behalf of Growers;

g.   While employed by Growers, immediately prior to the termination of their employment with Growers on June 30, 2014, Rietveld and Rosenberg caused Growers to pay them their compensation for July 2014 after the termination of their employment with Growers;

h.   While employed by Growers, Rietveld informed the shareholders and directors of Growers and Members of Partners that Rietveld needed to acquire ownership of Partners solely to maintain health insurance without disclosing to the shareholders

41

and/or directors of Growers that Rietveld registered Growers' Marks in the name of Partners, that Growers' Marks were still held in Partners' name, and that Rietveld and Rosenberg intended to and did operate Partners in direct competition with Growers using Growers' Marks and Growers' company information;

i.  While employed by Growers, Rietveld acquired the interest of all of the other Members other than Paarlberg Farms in Partners without disclosing to Growers that Rietveld registered Growers' Marks in the name of Partners, that Growers' Marks were still held in Partners' name, and that Rietveld and Rosenberg intended to and did operate Partners in direct competition with Growers using Growers' Marks and Growers' company information;

j.  While employed by Growers and shortly before they terminated their employment with Growers in June of 2014, Rietveld and Rosenberg copied and transferred Growers' customers and business information and records to computers used by Rosenberg to allow Rietveld and Rosenberg to better compete with Growers using Growers' customer and business information;

k.  In June 2014 while employed by Growers, and again in April 2015 prior to the termination of their relationship as exclusive sales agents for Growers, Rietveld and Rosenberg deleted and wiped Growers' information from Growers' computers without any authority from Growers and failed and refused to return all of Growers' property to Growers, including without limitation, Growers' computers, customer information, and financial records;

l.  While employed by Growers and subsequently while exclusive sales agent for Growers, Rietveld and Rosenberg organized and began operating Hybrids in

direct competition with Growers without the knowledge or authority of the shareholders and/or directors of Growers;

m. While exclusive sales agents for Growers and continuing through the present, Rietveld and Rosenberg operated Partners in direct competition with Growers, including without limitation, using Growers' assets, including without limitation, Growers' Marks and Growers' customer list, customer information, and financial information, to operate Partners in competition with Growers, without the knowledge or authority of the shareholders and/or directors of Growers;

n. While exclusive sales agents for Growers and continuing through the present, Rietveld and Rosenberg usurped Growers' assets and customer relations on behalf of Partners;

o. Rietveld and Rosenberg misappropriated Growers' assets, including without limitation, Growers' Marks, financial records, customer files, and computers while employed by Growers and subsequently as exclusive sales agents for Growers, misappropriated Growers' Property, and failed and refused to return to Growers the property misappropriated by Rietveld and Rosenberg upon the termination of their relationship to Growers, including without limitation, Growers' Property; and

p. While employed by Growers and subsequently while exclusive sales agents for Growers, Rietveld and Rosenberg failed to disclose to Growers communications from suppliers and customers of Growers, instead using such information to operate Hybrids and Partners in direct competition with Growers.

174.     As described above, Growers has a legitimate protectable interest in its assets, including without limitation, its name and marks, including Growers' Marks, and Growers' Property, being free from interference with Growers' customers and suppliers, and Growers' reputation and goodwill developed over the last in excess of 80 years.

175.     Defendants are benefitting as a result of Rietveld and Rosenberg's breaches of fiduciary duty in that Growers' relationship with its customers and suppliers has been damaged by such conduct, allowing Defendants to more effectively and more efficiently unfairly compete with Growers using Growers' information and assets, and allowing Defendants to obtain an unfair advantage over Growers.

## COUNT VIII

## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

176.     Growers incorporates by reference paragraphs 1 through 175 of the Complaint as if fully set forth herein.

177.     Based upon Growers' investment of considerable time, money and resources to develop and maintain its customers over the last 80 years and the long term nature of Growers' relationship with its customers, Growers reasonably expected to enter into and continue business relations with Growers' customers in the farm products industry, including without limitation, for sales of Growers' Products.

178.     Defendants were aware of and had knowledge of Growers' reasonable expectancy of its business relationships with Growers' customers, particularly as Rietveld and Rosenberg were employed by Growers for years, including selling to Growers' customers, and subsequently became exclusive sales agents for Growers responsible for soliciting sales exclusively on behalf of Growers.

179.    Defendants intentionally and unjustifiably interfered with Growers' reasonable expectancy of continuing its business relationships with Growers' customers by soliciting and selling Growers' Products to Growers' customers using Growers' Marks and Growers' assets on behalf of Partners and Hybrids without Growers' knowledge or authority after Rietveld and Rosenberg's termination of their employment and relationship with Growers as alleged hereinabove, including without limitation, sending to Growers' customers the May 20, 2015, correspondence attached as ***Exhibit 1.***

180.    As a result of Defendants' intentional and unjustified interference with Growers' reasonable expectancy of continuing Growers' business relationships with Growers' customers, Growers' relationship and goodwill with its customers has been damaged and Defendants have already and will continue to solicit Growers' customers on behalf of Partners and Hybrids.

## COUNT IX

## FRAUD

181.    Growers incorporates by reference paragraphs 1 through 180 of the Complaint as if fully set forth herein.

182.    At the times when Rietveld and Rosenberg owed fiduciary duties, including without limitation, duties of candor, honesty and loyalty, to Growers arising out of their employment and exclusive sales agent relationships with Growers, Rietveld and Rosenberg concealed material facts or made material misrepresentations of fact in one or more of the following respects:

　　　　　　a.    At the time Rietveld registered Growers' Marks in Partners' name and continuing through Rietveld's acquisition of a majority interest in Partners, Rietveld and Rosenberg failed to disclose to the shareholders and directors of Growers and Members of Partners that Rietveld had caused Growers' Marks to be registered in

45

Partners' name and that the registrations for Growers' Marks continued to be held by Partners;

b.  Rietveld and Rosenberg failed to disclose to the shareholders and directors of Growers that they had formed and were operating Hybrids in direct competition with Growers while they were employed by Growers and continuing through the termination of their relationship as exclusive sales agents for Growers;

c.  During their relationship as exclusive sales agents for Growers, Rietveld and Rosenberg failed to disclose to the shareholders and directors of Growers that Rietveld and Rosenberg were operating Partners independently of Growers using Growers' Marks and Growers' property in direct competition with Growers;

d.  Rietveld represented to the shareholders and directors of Growers and Members of Partners that Rietveld and Rosenberg needed ownership of Partners solely to maintain health insurance, when in fact, Rietveld and Rosenberg intended to and did acquire a majority interest in Partners in order to obtain ownership and control over Growers' Marks, which Rietveld had registered in Partners' name without the knowledge or authority of the shareholders and/or directors of Growers, and to directly compete against Growers and to acquire Growers' customers for Defendants' benefit;

e.  At the March 12, 2014 meeting of shareholders and directors of Growers and Members of Partners and again at the April 4, 2014 meeting of shareholders and directors of Growers and Members of Partners, Rietveld and Rosenberg failed to disclose that Partners had any assets, including without limitation, Growers' Marks; and

     f.   Rietveld and Rosenberg failed to disclose to the shareholders and directors of Growers that in connection with the termination of their employment with Growers, and again at the termination of their relationship as exclusive sales agents for Growers, Rietveld and Rosenberg copied Growers' information, including without limitation, Growers' customer information and financial records for Rietveld and Rosenberg to use on behalf of Partners and Hybrids in direct competition against Growers while returning to Growers only part of Growers' property, including without limitation, computers that Rietveld and Rosenberg had caused to be wiped clean of Growers' information.

183.    Defendants did not otherwise disclose their misappropriation and use of Growers' property to operate Partners and Hybrids in direct competition with Growers.

184.    Defendants, by their concealment and omissions set forth above, intended to induce a false belief on the part of Growers, Paarlberg Farms, and the other Members of Partners that Partners had no assets, that Growers' Marks were not registered in Partners' name, that Defendants were not operating Hybrids and Partners in direct competition with Growers, that Growers maintained possession and control over all of Growers' Property, including without limitation, its customer lists, customer information, and financial information, and that, in assigning their Membership interests in Partners to Rietveld and Rosenberg, the other Members of Partners were merely assigning membership interests in a company that had no assets in order to allow Rietveld and Rosenberg to maintain health insurance.

185.    Growers would not have registered Growers' Marks in Partners' name, would not have continued employing Rietveld and Rosenberg, would not have retained Rietveld and Rosenberg as exclusive sales agents for Growers, would have transferred Growers' Marks into

47

Growers' name prior to shareholders of Growers assigning their interest in Partners to Rietveld, and would have filed claims against Defendants sooner had Growers known of the true facts concerning any of the above concealments and/or misrepresentations of material fact.

186.     As a result of Rietveld and Rosenberg's failure to maintain separate books and records for Growers and Partners, Growers, Paarlberg Farms, and the other Members of Partners could not have discovered and were prevented from making a reasonable inquiry or inspection to determine whether or not any assets were held by Partners or in Partners' name and whether or not Partners was operating.  Moreover, none of Growers, Paarlberg Farms, nor the other Members of Partners had access to books or records of Hybrids, a company which they did not know was formed and/or operated by Rietveld and Rosenberg.

187.     Rietveld and Rosenberg made the foregoing material concealments and/or misrepresentations of material facts when they knew or should have known the facts represented were false, and which were intended to be and were in fact relied upon by Growers in continuing to employ Rietveld and Rosenberg, retaining Rietveld and Rosenberg as exclusive sales agents, not filing claims against Defendants sooner, and in most of the shareholders of Growers assigning their interests in Partners to Rietveld prior to transferring Growers' Marks to their rightful owner, Growers.

188.     By virtue of Defendants' concealments and misrepresentations of material facts, Growers has been damaged in that Defendants have acquired and used Growers' property, including without limitation, Growers' Marks and Growers' Property, to unfairly compete against Growers and interfere with Growers' business relationships with Growers' customers, and Rietveld and Rosenberg have acquired greater control over Growers' Marks through their acquisition of a majority interest in Partners, resulting in irreparable harm to Growers which has

been deprived of its property, has and will continue to lose customers and prospective customers, has and will continue to lose control over its names and marks, Growers' Marks have been and will be further diluted and customers further confused by Defendants' use of Growers' Marks, and Growers has lost and will continue to lose profits from its customers and lost customers, and will lose its goodwill and reputation that it has developed over the last in excess of 80 years.

## COUNT X

## COMPUTER FRAUD AND ABUSE ACT

## 18 U.S.C. §1030

189.     Growers incorporates by reference paragraphs 1 through 188 of the Complaint as if fully set forth herein.

190.     At all times relevant herein, Growers' computers, including without limitation, the computers used by Rietveld and Rosenberg on behalf of Growers while employees and while exclusive sales agents of Growers, are used in interstate commerce to communicate with Growers' customers throughout the United States for purposes of soliciting sales, selling, advertising, and marketing to customers and to process orders.

191.     At all times relevant herein, Growers' computers were "protected computers" within the meaning of 18 U.S.C. §1030(e)(2).

192.     Rietveld and Rosenberg intentionally accessed Growers' computers without authorization from the shareholders and/or directors of Growers to copy the information contained on such computers for their own use and to fully wipe such computers, including without limitation, cloning and wiping Growers' computers in June 2014 and removing all of Growers' information and all software on Growers' computers immediately prior to the

termination of their relationship as exclusive sales agents with Growers in April 2015 and prior to returning some of Growers' computers to Growers.

193.     Rietveld and Rosenberg exceeded any authority they may have had to use Grower's computers, particularly by copying Growers' information contained on such computers for their own use to directly compete against Growers and by fully wiping Growers' computers and removing all customer and business information and content and software from Growers' computers in June 2014 and immediately prior to the termination of their relationship as exclusive sales agents with Growers in April 2015 and prior to returning some of Growers' computers to Growers.

194.     Rietveld and Rosenberg, by accessing and wiping Growers' computers, intended to and did defraud Growers, including without limitation, by misappropriating and obtaining Growers' customer records, financial records, and customer lists for purposes of directly competing with Growers while leaving Growers without Growers' information necessary to solicit and service Growers' customers.

195.     As a direct and proximate result of Rietveld and Rosenberg's intentional and unauthorized access of Growers' computers, Growers has suffered damages and losses exceeding $5,000.00, including without limitation, loss of Growers' customer records, financial records, and customer lists that were wiped from the computers returned to Growers and which are no longer available to Growers; loss of the software previously installed on Growers' computers; lost customers, revenues, and profits derived from the use of such information; and loss of Growers' competitive edge.

## COUNT XI

## CONVERSION

50

196.     Growers incorporates by reference paragraphs 1 through 195 of the Complaint as if fully set forth herein.

197.     Growers has a right to Growers' Property and has an absolute and unconditional right to immediate possession of Growers' Property.

198.     Growers have made numerous repeated demands for the return of Growers' Property unlawfully retained by Defendants which demand have been refused by Defendants.

199.     As a result of the conversion of Growers' Property, Growers has been damaged.


## COUNT XII

## DECLARATORY ACTION (CONTINUED OWNERSHIP IN PARTNERS)

200.     Paarlberg Farms incorporates by reference paragraphs 1 through 199 of the Complaint as if fully set forth herein.

201.     By their May 20, 2015, correspondence to customer of Growers attached as *Exhibit 1,* Rietveld has claimed sole ownership of Partners.

202.     Paarlberg Farms never assigned its interest in Partners to Rietveld.

203.     Paarlberg Farms has been excluded from decision making in the operation of Partners, particularly as Rietveld and Rosenberg have unilaterally operated Partners without the knowledge or authority of the other Members.

204.     An actual controversy has arisen between Paarlberg Farms and Rietveld, Rosenberg, and Partners regarding Paarlberg Farms' continued ownership interest in Partners.

## COUNT XIII

## ACCOUNTING

205.     Growers and Paarlberg Farms incorporate by reference paragraphs 1 through 204 of the Complaint as if fully set forth herein.

206.     As described hereinabove, Rietveld and Rosenberg breached their fiduciary duties to Growers.

207.     Growers and Partners possess mutual accounts which are of a complex nature, including without limitation, revenues, expenses, and profits generated by the sale of Growers' Products, particularly where Rietveld and Rosenberg failed to maintain separate books, records, assets, and accounts for Growers and Partners and commingled property of Growers and Partners together with Rietveld and Rosenberg's individual property while employed by Growers and Partners, and subsequently while the exclusive sales agent for Growers.

208.     Paarlberg Farms and Rietveld possess mutual accounts which are of a complex nature with respect to their ownership interests in Partners.

209.     As a Member of Partners, Paarlberg Farms is entitled to information regarding Partners pursuant to 805 ILCS 180/10-15 and 1-40.

210.     Despite previous requests by Growers and Paarlberg Farms, Defendants have failed and refused to provide Growers and Paarlberg Farms with information and documentation relative to sales made and monies received by Defendants from Growers' customers, and sales made and monies paid to Defendants by other customers of Growers' Products that Defendants obtained using Growers' Marks and Growers' customer and financial information. Additionally, Defendants have failed and refused to identify and account for Growers' Property subsequent to the termination of Rietveld and Rosenberg's relationship with Growers.

211.     Despite previous requests by Paarlberg Farms, Defendants have failed and refused to provide Paarlberg Farms with information and documentation relative to the sales made and

monies received by Partners, assets and liabilities of Partners, and distributions made by Partners since June 30, 2014.

212.     Growers and Paarlberg Farms do not have access to the requested financial information and documentation requested by them.

213.     Growers and Paarlberg Farms are in need of discovery, particularly with respect to the revenues, sales, and profits generated by Defendants from the sale of Growers' Products and/or through the use of Growers' Marks, the location and title to Growers' assets which have been commingled with and/or retained by Defendants, and the revenues, assets, liabilities, and distributions from Partners.

214.     Growers and Paarlberg Farms do not have an adequate remedy at law, particularly as Defendants have deprived Growers and Paarlberg Farms of their property and Growers' computer records, including without limitation, its customer information, customer list, and financial records, and Growers and Paarlberg Farms do not have access to Partners' revenue.

## PRAYER FOR RELIEF

WHEREFORE, Growers and Paarlberg Farms pray that judgment be entered in their favor against Defendants as follows:

A.  Permanently enjoining and restraining Defendants, their officers, executives, Members, Managers, agents, subsidiaries, affiliated companies, and all other persons, firms corporations, or other entities in active concert and participation with them from directly or indirectly:

    (i)     Advertising, marketing, promoting, offering, or selling any products using trademarks, tradenames, service marks, or domain names comprising in whole or in part the terms, "Dutch Valley," "Dutch Valley Growers," the windmill

logo design attached as ***Exhibit 2,*** Growers' Marks, or any other term, mark, or name confusingly similar to Growers' Marks;

(ii)     Doing any other act or thing that is likely to induce the belief that Defendants' products are in any way affiliated or connected with, sponsored by, or related to Growers or, vice versa, that Growers' products are in any way affiliated or connected with, sponsored by, or related to Defendants, or that is likely to diminish or tarnish the distinctiveness of Growers and its marks;

(iii)    Doing any other act or thing that is likely to induce the belief that Defendants' advertising, marketing, offering, and/or selling of products is infringing rights of Growers under Growers' Marks; and

(iv)    Utilizing Growers' assets and/or information, including without limitation, Growers' Marks, Growers' financial and/or customer information, and Growers' customer list to compete with Growers.

B.  Requiring Defendants to cancel, or in the alternative assign to Growers, all existing federal or state trademark, trade name, service mark, or domain name registrations for "Dutch Valley," "Dutch Valley Growers," the windmill logo design attached as ***Exhibit 2,*** Growers' Marks, or any other term, mark, or name confusingly similar to Growers' Marks;

C.  Requiring Defendants, pursuant to 15 U.S.C. §1116(a), to file with this Court and serve upon Growers within thirty (30) days after service of the injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction, ceased selling all products under the "Dutch Valley" and "Dutch Valley Growers" names and marks and the windmill logo design mark attached as ***Exhibit 2,*** and implemented

adequate and effective means to discontinue advertising, marketing, promoting, offering, and selling of products under such names and marks;

D.  Requiring Defendants, pursuant to 15 U.S.C. §1118, to deliver for destruction, or show proof of said destruction or sufficient modification to eliminate the infringing matter, all articles, packaging, wrappers, products, advertising, displays, labels, signs, circulars, promotional items, literature, internet websites, sales aids, letterhead, business cards, and other matter in Defendants' actual or constructive possession, custody, or control bearing the "Dutch Valley" and "Dutch Valley Growers" names and marks and the windmill logo design mark attached as *Exhibit 2,* or any other name or mark confusingly similar to Growers' Marks;

E.  Enjoining and restraining Defendants, their officers, executives, Members, Managers, agents, subsidiaries, affiliated companies, and all other persons, firms, corporations, or other entities in active concert and participation with them from directly or indirectly soliciting and/or selling any products competitive with Growers' Products to any of Growers' customers for a period of two years;

F.  Enjoining and restraining Defendants, their officers, executives, Members, Managers, agents, subsidiaries, affiliated companies, and all other persons, firms, corporations, or other entities in active concert and participation with them from directly or indirectly disclosing or utilizing Growers' Confidential Information/Trade Secrets and requiring Defendants to return such Confidential Information/Trade Secrets to Growers;

G.  Requiring Defendants to return to Growers all of Growers' Property, including without limitation, computers, customer information, customer list, and financial information within two (2) days of entry of the order;

H.  Declaring, adjudicating, and ordering that Paarlberg Farms continues to own a 1/6th Membership interest in Partners, with all rights pertinent thereto;

I.  Requiring Defendants to:

> (i)  Account for and pay to Growers all profits derived from the acts complained of herein;
>
> (ii)  Reimburse Growers for all damages suffered by Growers by reason of Defendants' acts complained of herein;
>
> (iii)  Remit to Growers treble damages pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. §1117(a) and 815 ILCS 510/3; and
>
> (iv)  Remit to Growers exemplary damages pursuant to 765 ILCS 1065/4 based upon Defendants' willful and malicious misappropriation of Growers' Confidential Information/Trade Secrets;

J.  Requiring Defendants to pay to Growers for the unjust enrichment caused by Defendants' misappropriation of Growers' Confidential Information/Trade Secrets in excess of $75,000;

K.  In the alternative to Paragraph J, requiring Defendants to pay Plaintiffs a reasonable royalty for Defendants' unauthorized use of Growers' Confidential Information/Trade Secrets;

L.  Requiring Defendants to reimburse Growers for the cost of this action, including Growers' reasonable attorney's fees and disbursements pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. §1117(a), and 815 ILCS 510/3, and 765 ILCS 1065/5;

M.  For an award of compensatory damages against Defendants and in favor of Growers and Paarlberg Farms in an amount in excess of $75,000, including without limitation, forfeiture of all sums paid to Rietveld and Rosenberg during the periods in which they breached their respective fiduciary duties to Growers;

56

N.  For punitive damages to be assessed against Defendants;

O.  Requiring the Defendants remit to Growers prejudgment interest on any and all damages

awarded to Growers;

P.  For Plaintiff's court costs to be assessed against Defendants; and

Q.  Requiring that Growers be awarded such other and further relief as this Court deems just

and proper.

Dated:  November 25, 2015

Respectfully submitted,

DUTCH VALLEY GROWERS, INC. and
PAARLBERG FARMS


By:  /S/ Patrick C. Keeley_____
        One of Plaintiffs' Attorneys


Patrick C. Keeley
Piccione, Keeley & Associates, Ltd.
Firm I.D. 1370
122C South County Farm Road
Wheaton, Illinois 60187
630-653-8000 - telephone
630-653-8029 (fax)
pkeeley@pkalaw.com